# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MUNICIPALITY OF CABO ROJO,<br><br>**Plaintiff**,<br><br>v.<br><br>POWERSECURE, INC.,<br><br>**Defendant**. | **Civil No.** 18-1797 (FAB)<br><br>**Lead Case** |
| MUNICIPALITY OF SALINAS,<br><br>**Plaintiffs**,<br><br>v.<br><br>POWERSECURE, INC.,<br><br>**Defendant**. | **Civil No.** 19-1073 (FAB) |

## OPINION AND ORDER

BESOSA, District Judge.

The Municipality of Salinas ("Salinas") and the Municipality of Cabo Rojo ("Cabo Rojo") (collectively, "municipalities"), commenced tax collection actions against Powersecure, Inc. ("Powersecure") pursuant to the Municipal License Tax Act and the Autonomous Municipalities Act. Powersecure moves to dismiss both actions pursuant to Federal Rule of Civil Procedure 12(b)(1). (Docket Nos. 12 and 40.) Powersecure also moves for summary judgment regarding the Municipal License Tax cause of action asserted by Salinas pursuant to Federal Rule of Civil Procedure 56.

(Docket No. 63.)  For the reasons set forth below, Powersecure's motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**.  (Docket Nos. 12 and 40).  Powersecure's motion for summary judgment is **GRANTED**.  (Docket No. 63.)

I.  **Background**

Hurricane María "is by far the most destructive hurricane to hit Puerto Rico in modern times."[1]  On September 20, 2017, the high-end Category 4 storm "crossed the island, roughly diagonally from southeast to northwest, for several hours and emerged into the Atlantic [ocean]."  Id. at p. 7.  Puerto Rico sustained severe damage to its electrical power grid.[2]  The United States Army Corps of Engineers awarded Powersecure a contract to "[p]erform all aspects of restoration of electric power to the Territory and municipalities of Puerto Rico on the Puerto Rico Electric Authority (PREPA) power grid."  (Docket No. 63, Ex. 3 at p. 11.)

Powersecure "focus[ed] primarily on getting transmission and distribution connected to power plants" in San Juan, Mayagüez, Ponce, Bayamón, Carolina and Arecibo.  Id.  To accomplish this

---

[1] See National Hurricane Center Tropical Cyclone Report: Hurricane Maria, National Oceanic Atmospheric Administration, (February 14, 2019) (available at https://www.nhc.noaa.gov/data/tcr/AL152017_Maria.pdf) (last visited July 8, 2019).

[2] See James Glanz, How Storms, Missteps and an Ailing Grid Left Puerto Rico in the Dark, N.Y. TIMES, May 6, 2018 ("Puerto Rico has 2,400 often mountainous miles of high-voltage transmission lines, 342 substations and 30,000 miles of lower-voltage distribution lines that go to neighborhoods and homes . . . María damaged 80 percent of that system.").

objective, Powersecure established base camps in the municipalities of Cabo Rojo, Juana Díaz, Arecibo, Caguas and Aguadilla. (Docket No. 63, Ex. 2.) These base camps provided "housing for [Powersecure] workers, storage facilities for its equipment and parts, parking areas for its trucks, and offices from which it could direct its operations and distribution centers." Id. Powersecure repaired and replaced the electrical transmission system for Cabo Rojo and Salinas. (Case No. 18-1797, Docket No. 41 at p. 5; Case No. 19-1073, Docket No. 1, Ex. 5 at p. 4.)

### A. The Cabo Rojo Action

On October 23, 2018, Cabo Rojo commenced a civil action against Powersecure in the United States District Court for the District of Puerto Rico ("Cabo Rojo action"). (Case No. 18-1797, Docket No. 1.) According to Cabo Rojo, Powersecure is subject to the Municipal License Tax Act, P.R. Laws Ann. tit. 21, sections 651 *et seq.*, and the Construction Excise Tax, P.R. Laws Ann. tit. 21, sections 4001(cc), 4057. (Docket No. 41 at pp. 4—7).

Id. at p. 6.[3]  Cabo Rojo seeks to collect $625,000.00 from Powersecure in outstanding tax liability: $125,000.00 for the Municipality License Tax and $500,000.00 for the Construction Excise Tax.  Id. at pp. 5—6.

**B.  The Salinas Action**

On October 30, 2018, Salinas commenced an action against Powersecure in the Court of First Instance, Guayama Superior Division, Civil No. SA2018CV00159 ("Salinas action").  (Case No. 19-1073, Docket No. 1, Ex. 3 at p. 2.)[4]  The causes of action asserted by Salinas parallel the claims raised by Cabo Rojo: that Powersecure failed to remit the Municipal License Tax and Construction Excise Tax.  Id.  Salinas contends that Powersecure is liable for $4,400,000.00 in outstanding tax liability: $400,000.00 for the Municipal License Tax and $4,000,000.00 for

---

[3] Cabo Rojo also named Thompson Consulting, LLC ("Thompson") as a defendant, purporting that Thompson collected and disposed of debris in Cabo Rojo without paying the requisite taxes.  (Docket No. 1 at p. 4.)  After learning that Thompson "had not provided such services," however, Cabo Rojo moved to dismiss the claims against Thompson.  (Docket Nos. 35 and 37.)  The Court granted Cabo Rojo's motion to dismiss without prejudice.  (Docket No. 38.)  Cabo Rojo filed an amended complaint, naming Powersecure and Looks Great Services ("Looks Great") as defendants.  (Docket No. 41.)  Two months later, however, Cabo Rojo moved to dismiss the claims against Looks Great "after careful evaluation of the services performed by said company."  (Docket No. 72 at p. 2.)  The Court dismissed the claims against Looks Great with prejudice on June 14, 2019.  (Docket No. 75.)

[4] Salinas also sued the Army Corps of Engineers.  (Case No. 19-1073, Docket No. 1, Ex. 3 at p. 1.)  Subsequently, the Army Corps of Engineers "communicated their full willingness to assist the municipality in identifying the companies, contract and amounts billed for the works performed in the territorial limits of Salinas."  (Docket No. 1, Ex. 10 at pp. 2—3.)  Salinas moved to dismiss the claims against the Army Corps of Engineers.  (Docket No. 1, Ex. 10.)

the Construction Excise Tax.  Id. at pp. 6 and 8.  Powersecure filed a notice of removal on January 24, 2019. (Docket No. 1.)[5] The Court consolidated the Cabo Rojo and Salinas actions. (Docket No. 29.)

**II. The Construction Excise Tax**

Powersecure moves to dismiss the Municipal License and the Construction Excise causes of action asserted by both municipalities pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)").  (Dockets. 12 and 40.)

**A.  Federal Rule of Civil Procedure 12(b)(1)**

Federal courts are courts of limited jurisdiction. Destek Grp. v. State of N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003); Fina Air, Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008) (noting that the Court "ha[s] the duty to construe [its] jurisdictional grants narrowly")  (Besosa, J.) (internal citations omitted).  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss an action for

---

[5] Cabo Rojo and Salinas invoke this Court's diversity jurisdiction, alleging complete diversity of citizenship among the parties, and that the amount in controversy exceeds $75,000.  (Case No. 18-1797, Docket No. 41; Case No. 19-1073, Docket No. 1, Ex. 5) (citing 28 U.S.C. § 1332).  Based on the allegations set forth in the amended complaints, the Court is satisfied that diversity jurisdiction exists in both actions.  Puerto Rico law governs whether the amended complaints survive Powersecure's motions to dismiss.  See Quality Cleaning Prod. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 204 (1st Cir. 2015) ("Federal courts sitting in diversity apply the substantive law of the state and, pursuant to statute, Puerto Rico is treated as a state for diversity purposes.").

lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction is properly invoked when a plaintiff asserts a colorable claim "arising under" the United States Constitution or federal law.  28 U.S.C. § 1331; Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006) (internal citation omitted).

"Generally, a claim arises under federal law within the meaning of section 1331 if a federal cause of action emerges from the face of a well-pleaded complaint."  Viqueira v. First Bank, 140 F.3d 12, 17 (1st Cir. 1998) (internal citations omitted).  In considering a Rule 12(b)(1) motion, the Court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor."  Merlonghi v. U.S., 620 F.3d 50, 54 (1st Cir. 2010) (internal citations omitted).  Cabo Rojo and Salinas shoulder the burden of establishing the existence of federal jurisdiction.  Viqueira, 140 F.3d at 16 (internal citations omitted).

    **C.    Cabo Rojo and Salinas Are Precluded from Imposing the Construction Excise Tax on Powersecure**

The Autonomous Municipalities Act empowers Cabo Rojo and Salinas to tax "the right to carry out a construction activity and/or construction work within the territorial limits of the municipality."  Laws P.R. Ann. tit. 21, § 4001(cc); see Río Constr. Corp. v. Mun. of Carolina, 2001 TSPR 36, 2001 P.R. Supp. LEXIS 25

(Mar. 16, 2001) (holding that the Construction Excise Tax "requires private companies contracted by an agency or instrumentality of the central, federal or municipal government for the performance of construction work to pay municipal excise taxes").[6] The entity or person responsible for the construction activity "shall submit, before the Finance Office of the municipality in question, a detailed itemized declaration of activity, describing the costs of the work to be performed." Law P.R. Ann. tit. 21, § 4057(a). The Construction Excise Tax is a function of the amount set forth in the declaration and the applicable tax-rate. Laws P.R. Ann. tit. 21, § 4057(b).[7]

Powersecure failed to submit Construction Excise Tax declarations to Cabo Rojo and Salinas, prompting the municipalities to seek judicial redress. (Case No. 18-1797. Docket No. 1 at p. 5; Case No. 19-1073, Docket No. 1, Ex. 5 at p. 5.) According to Powersecure, the causes of action premised on

---

[6] "The official translations of many Puerto Rico Supreme Court cases cited . . . do not contain internal page numbers. Accordingly, [the Court] cannot include pin-point citation references for those cases." Citibank Global Markets, Inc. v. Rodríguez-Santana, 573 F.3d 17 (1st Cir. 2009).

[7] Puerto Rico municipalities determine the tax-rate by "ordinance approved by two-thirds of the votes for this purpose." Law P.R. Ann. tit. 4001(cc). Cabo Rojo enacted a staggered tax-rate: projects costing up to $10,000.00 are exempt, projects from $10,000.01 to $100,000.00 are taxed at 1.8%, and projects costing more than $100,000.00 are taxed at 2.4%. (Docket No. 77, Ex. 7 at p. 12) (Certified Translation of Mun. of Cabo Rojo, P.R., Ordinance 49 (June 8, 2009)). Salinas imposes an "excise tax of five percent (5%) of the total cost of the construction work." (Case No. 19-1073, Docket No. 1, Ex. 5 at p. 5.)

the Construction Excise Tax are premature because the municipalities failed to exhaust administrative remedies. (Docket Nos. 12 and 40.) The Court agrees.

Cabo Rojo contends that "the Municipality had no recourse but to seek relief before a court of law." (Docket No. 14 at p. 4.) This is a specious argument. Indeed, the Puerto Rico Legislature anticipated the possibility of noncompliance with the Autonomous Municipalities Act. Failure to submit the declaration may result in administrative or penal sanctions. Laws P.R. Ann. tit. 21, § 4057(g).[8] When the Finance Director determines that the taxpayer has:

> [failed] to comply with the presentation of any of the declarations and/or documents required to corroborate the information provided on behalf of the taxpayer . . . **after granting an administrative hearing to such effect and pursuant to the procedure established in the Uniform Administrative Procedures Act §§ 2101 *et seq*. of Title 3**, if the imputed conduct is established, the Finance Director shall proceed to collect the corresponding excise tax, and shall impose and administrative penalty on the taxpayer, equal to twice the amount of the imposed excise tax.

Id. (emphasis added). The Autonomous Municipalities Act provides for judicial intervention after the taxpayer remits the

---

[8] The Autonomous Municipalities Act provides that any person who "deliberately, voluntarily and maliciously fails to file the declaration . . . upon conviction . . . shall be sanctioned with a fine not greater than five hundred dollars ($500), or with imprisonment of not more than six (6) months or both penalties, at the discretion of the Court." Id. Cabo Rojo and Salinas seek monetary damages in a civil action. Accordingly, this provision is inapplicable.

Construction Excise Tax. Id. The taxpayer may impugn the administrative penalty "once its correction is ratified by the Court of First Instance." Id.

The statutory language regarding failure to submit the declaration is unequivocal. Powersecure is entitled to an administrative hearing. Laws P.R. Ann. tit. 21, § 4057(g); see Mullane v. Chambers, 333 F.3d 322, 330 (1st Cir. 2003) ("When the statutory language is plain and unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances") (internal citation and quotation omitted). The Puerto Rico Supreme Court has held that "court[s] will not have jurisdiction until the administrative remedies are exhausted." Rodríguez v. De Ferrer, 121 D.P.R. 347, 1988 P.R. Sup. LEXIS 192 (Official Translation) (May 16, 1988). The Autonomous Municipalities Act cites the Puerto Rico Uniform Administrative Procedures Act, a statute that encourages "the informal solution of administrative issues so that formal solution of the matter submitted to the agency will be unnecessary." P.R. Laws Ann. tit. 3, § 2101. The exhaustion of administrative remedies doctrine "strike[s] an adequate balance and distribution of power and tasks between the administrative agencies and the judicial power; to insure greater efficacy and promptness in the administrative proceedings and avoid unnecessary and untimely judicial interventions." New Progressive Party v.

Hernández, 122 D.P.R. 36, 1988 P.R. Sup. LEXIS 255 (Official Translation) (Sept. 14, 1988).  The causes of action premised on the Construction Excise Tax are premature.  Accordingly, Powersecure's motions to dismiss the Construction Excise Tax claims of both Cabo Rojo and Salinas are **GRANTED**.  (Docket Nos. 12 and 40.)

**III. The Puerto Rico Municipal License Tax**

Powersecure moves to dismiss the Municipal License Tax causes of action pursuant to Rule 12(b)(1).  (Docket Nos. 12 and 40.)  The Puerto Rico Legislature enacted the Municipal License Tax Act in 1914, authorizing local governments to "levy and collect taxes from persons for the privilege of doing business within their territorial jurisdictions." Sea-Land Servs., Inc. v. San Juan, 505 F. Supp. 533, 536 (D.P.R. 1980) (Pesquera, J.); Sears Roebuck De P.R. v. Mun. of San Juan, 122 D.P.R. 26 (1988) ("[W]e reiterate that municipalities are empowered, by legislative authority, to levy municipal license taxes.").[9]  The Municipal License Tax applies to "every person engaged in the rendering of any service, or in the sale of any goods, financial business and/or any industry

---

[9] The Puerto Rico Legislature amended the Municipal License Tax Act in 1917, 1971, and 1974.  See Public Law No. 30 (Apr. 12, 1917), Public Law No. 27 (June 12, 1971), and Public Law No. 113 Part 1 (July 10, 1974).

Civil No. 18-1797 (FAB)                                                      11

or business."  P.R. Laws Ann. tit. 21, § 651b.[10]  This tax "in no case shall exceed one point five percent (%1.5) of its volume of business."  Id. § 651d.  "Volume of business" is the:

> gross income received or earned from the rendering of any service, the sale of any goods or by any other industry or business in the municipality in which the main enterprise carries out its operations [or] its offices, warehouses, or . . . construction sites.

Laws P.R. Ann. tit. 21, § 651a.  The volume of business for a contract is the "gross amount of the contract without deducting any cost item whatsoever."  Id.  Powersecure failed to submit declarations regarding volume of business to the Finance Directors in Cabo Rojo and Salinas.  Case No. 18-1797, Docket No. 41 at p. 5; Case No. 19-1073, Docket No. 1, Ex. 3 at p. 6; see Laws P.R. Ann. tit. 21, § 651i (the taxpayer "shall be bound to file a statement of the volume of business").

### A. There is No Exhaustion of Administrative Remedies Requirement in the Municipal License Tax Act

Powersecure also moves to dismiss the Municipal License Tax causes of action, asserting that the municipalities failed to exhaust administrative remedies.  (Docket Nos. 12 and 40.)  The motions to dismiss cite section 651o of the Municipal License Tax

---

[10] A "person" pursuant to the Municipal License Tax Act is any "individual, a trust or estate, a partnership or a corporation, association . . . engaged, for profit, in the rendering or any service, in the sale of any goods, in any financial business or any industry or business in any municipality of the Commonwealth of Puerto Rico."  P.R. Laws Ann. tit. 21, § 651a.

Act, a provision that concerns the collection of a deficiency. P.R. Laws. Ann. tit. 21, § 651o.  A deficiency is the:

> amount declared as tax by the person, if said person filed a return and declared therein an amount as tax, plus . . . the amounts previously assessed or collected without assessment, as deficiency, less the amount of the reductions made.

P.R. Laws. Ann. tit. 21, 651n.  Because Powersource did not file a return or declaration, this provision is inapplicable.  The relevant provision is section 651s, providing that "in the case of failure to submit the declaration, the tax may be assessed or a **proceeding in court without assessment for the collection of said license tax may be commenced at any time**."  P.R. Laws Ann. tit. 21, § 651s (emphasis added).  Consequently, Cabo Rojo and Salinas need not exhaust administrative remedies because the municipalities may seek judicial intervention "at any time."  Id. Powersecure's motions to dismiss regarding the Municipal License Tax Act claims are **DENIED**.

   **B.   Salinas' Municipal License Tax Cause of Action**

Powersecure also moves for summary judgment regarding the Municipal License Tax Act claim asserted by Salinas pursuant to Federal Rule of Civil Procedure 56 ("Rule 56").  (Docket No. 63.)[11]

---

[11] Powersecure moved for summary judgment solely as to Salinas. (Docket No. 63.)

### 1. Summary Judgment Standard

A court will grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted). Powersecure shoulders the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion has been presented, the burden shifts to Salinas "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted). Summary judgment is appropriate if the nonmovant's case rests merely upon "conclusory allegations,

Civil No. 18-1797 (FAB)                                                    14

improbable references, and unsupported speculation." Forestier-Fradera v. Mun. of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006).

### 2. Salinas May Not Impose the Municipal License Tax on Powersecure

Courts interpret the Municipal License Tax Act broadly, cognizant of "the clear and precise declarations made by the Legislative Assembly from time to time for the purpose of strengthening rather than weakening, the taxing power of the municipal governments." Arecibo Bldg. Corp. v. Mun. of Arecibo, 115 D.P.R. 76, 1984 P.R. Sup. LEXIS 84 (Official Translation) (Feb. 7, 1984) (holding that the "lease of lots in a shopping center is an activity" subject to taxation) (citation omitted). The mere presence of a business in a municipality, however, is an insufficient basis to impose the Municipal License Tax. The dispositive inquiry for purposes of the Municipal License Tax is whether Powersecure's "revenue is derived as a consequence of the business that [it] conduct[ed] in the municipality, which implies that revenue would not have been generated if it had not been for the operations carried out there." Lever Bros. Export Corp. v. Mayor of San Juan, 140 D.P.R. 152, 1996 P.R. Sup. LEXIS 207 (Mar. 7, 1996) (citing Coca-Cola Co. v. Mun. de Carolina, 136 D.P.R. 216, 1994 P.R. Sup. LEXIS 271 (May 27, 1994)). To substantiate the Municipal License Tax, Salinas must demonstrate

that Powersecure maintained "a commercial establishment or office that engages, for profit, in the provision of any service within the municipality." Id.; Lukoil Pan Americas. v. Mun. of Guayanilla, 192 D.P.R. 879, 2015 P.R. Sup. LEXIS 35 (Apr. 9, 2015) (holding that "regardless of the particular case of the business or industry in question, [the Municipal License Tax] establishes the need of physical presence in the taxing municipality, either through offices, branches, warehouses, or other industry or business organizations").[12]

The physical presence of a business within a municipality is assessed on a spectrum. At one extreme, offices that contribute to company sales trigger the Municipal License Tax. Lever Bros., 140 D.P.R. at 152. Mere storage of inventory within a municipality, however, is an insufficient basis to tax an entity. Id. (citing El Día, Inc. v. Mun. de Guaynabo, 187 D.P.R. 811, 2014 P.R. Sup. LEXIS 17 (Feb. 13, 2013) ("[A] municipality cannot levy license taxes to an entity just for carrying out an activity that is incidental to its business within its territorial limits when it does not generate any income").

In Lever Bros., the Municipality of San Juan imposed the Municipal License Tax on the local office of a New

---

[12] Powersecure submitted certified English translations of Lever Bros., 140 D.P.R. 152, and Lukoil Pan Americas, 192 D.P.R. 879. (Docket No. 63, Exs. 4 and 5.)

York corporation.  140 D.P.R. 152.  The San Juan office provided technical, marketing, and consulting services.  Id.  The corporation challenged the applicability of the tax, arguing that the San Juan office was "not a commercial establishment that engages, for profit, in the provision of a service, the sale of goods or any industry or business in the municipality of reference."  Id.  The Puerto Rico Supreme Court rejected this argument, holding that the San Juan office "clearly . . . renders services for profit."  Id.  The Lever Bros. court considered the objective of the San Juan office, which provided services "aimed at increasing the volume of sales on the Island."  Id.  Although the San Juan office "did not supply inventory and did not get involved with billing," this branch "undoubtfully influenced and benefited directly the sales on consignment and distribution of products in Puerto Rico."  Id.  Accordingly, the Municipal License Tax extended to revenue generated by the San Juan Office.  Id.

     Twenty years after Lever Bros., the Puerto Rico Supreme Court revisited the Municipal License Tax in Lukoil Pan Americas.  192 D.P.R. 879.  The Lukoil Pan Americas court held that "the delivery of a product at a port is [hardly] a substantial economic event that serves as a basis for a municipality to levy the municipal license taxes on a commercial transaction."  Id.

Ultimately, the applicability of the Municipal License Tax is contingent on a totality of the circumstances. Id.

Powersecure's mere physical presence in Salinas cannot sustain the imposition of the Municipal License Tax. Eric Dupont ("Dupont"), vice president and chief commercial officer for Powersecure, submitted a sworn declaration in support of the motion for summary judgment. (Docket No. 63, Ex. 2.) According to Dupont, "Powersecure did not establish base camps in Salinas." Id. at p. 2. Powersecure's activities in Salinas "were limited to the performance of the reparation and restoration tasks for which it was engaged by the Corps of Engineers." Id.[13] The absence of a commercial establishment in Salinas is fatal to its Municipal License Tax cause of action. See P.R. Tel. Co. v. Mun. of Mayagüez, 103 D.P.R. 581 (1975) (holding that Puerto Rico Telephone Company "was not bound to pay license taxes in the mentioned municipalities where it does not have offices to transact business.").

---

[13] Salinas denied these assertions, averring that "without having the opportunity to conduct discovery of evidence, it is impossible for the Municipality to establish the veracity" of these assertions. (Docket No. 76, Ex. 1 at p. 3.) Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. Loc. Rule 56. A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56(c). Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 130 (1st Cir. 2010). Because Salinas failed to controvert Dupont's statement properly, the Court will regard the facts alleged by Powersecure as true.

Accordingly, Powersecure's motion for summary judgement as to Salinas' Municipal License Tax cause of action is **GRANTED**.

**IV. Order to Show Cause**

The Court is not persuaded that there is federal subject matter jurisdiction to adjudicate Cabo Rojo's Municipal License Tax claim. See McCulloch v. Vélez, 364 F.3d 1, (1st Cir. 2004) ("It is black-letter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction."). It is uncertain whether the base camps established by Powersecure in Cabo Rojo fulfill the physical presence requirement pursuant to the Municipal License Tax Act. See Caribbean Restaurants, LLC v. Mun. de Cataño, Case No. DAC2012-0560 (504), 2013 WL 4690663 (P.R. Cir. June 26, 2013) (holding that although the "administrative office and warehouse contribute to the company's capacity to operate . . . as a general rule, the activities carried out there, by themselves, do not generate income, profits or sales in that municipality, nor do they meet the criteria for the imposition of the municipal license taxes").[14] Accordingly, the Court **ORDERS** Powersecure and Cabo Rojo to show cause as to why the Court should not dismiss the Municipal License Tax cause of action for lack of

---

[14] Powersecure submitted a certified English translation of Caribbean Restaurants, LLC, 2013 WL 4690663. (Docket No. 22, Ex. 3.)

jurisdiction.  The parties shall address whether the base camps are a sufficient basis to impose the Municipal License Tax.

## V. Conclusion

For the reasons set forth above, Powersecure's motion to dismiss Cabo Rojo's complaint is **GRANTED** as to the Construction Excise Tax claim and **DENIED** as to the Municipal License Tax claim.  (Docket No. 12.)  Cabo Rojo's Construction Excise Tax claim is **DISMISSED WITHOUT PREJUDICE**.  Id.

Powersecure's motion to dismiss Salinas' complaint is **GRANTED** as to the Construction Excise Tax claim and **DENIED** as to the Municipal License Tax claim.  (Docket No. 40.)  Salinas' Construction Excise Tax claim is **DISMISSED WITHOUT PREJUDICE**.  Id.

Powersecure's motion for summary judgment regarding Salinas' Municipal License Tax claim is **GRANTED**.  (Docket No. 63.)  Salinas' Municipal License Tax claim is **DISMISSED WITH PREJUDICE**.

Partial Judgment shall be entered accordingly.

The only remaining cause of action before the Court is Cabo Rojo's Municipal License Tax claim.  Powersecure and Cabo Rojo are **ORDERED** to show cause as why the Court should not dismiss the Municipal License Tax cause of action for lack of jurisdiction. The parties shall address whether the base camps are a sufficient basis to impose the Municipal License Tax **no later than July 22, 2019.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 9, 2019.

s/ Francisco A. Besosa  
FRANCISCO A. BESOSA  
United States District Judge